[L.A. No. 30619. Aug. 23, 1976.]

DAVIS WIRE CORPORATION, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Philip C. Griffin and Lawrence K. Keethe, Deputy Attorneys General, for Defendant and Appellant.

Latham & Watkins, Austin H. Peck, Jr., and John F. Walker, Jr., for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—The State Board of Equalization (Board) appeals from an order directing it to refund to plaintiff, Davis Wire Corporation (Davis), certain sales taxes paid under protest. The Board contends that a sale at retail of capital assets used to manufacture nonexempt goods is taxable even if the vendor has never before sold such equipment or such goods at retail. It observes that exempting such sales from taxation would cost the state substantial tax revenues since businesses would be able

completely to liquidate their assets without incurring any sales tax liability. We concur with the Board, and thus reverse the judgment below.

The case was tried upon stipulated facts which establish the following: The sales tax levied by the Board was based upon the retail sale of two mills that manufactured wire and paper products which the mills sold for resale. The sale of each mill was a retail sale of the entire business and of all of its assets.

The two mills so purchased by plaintiff Davis were North American Wire Mills (Wire Mills), a corporation that manufactured woven wire mesh products, and North American Mills (Paper Mills), a partnership that manufactured impregnated paper products. All the products produced by Wire Mills and Paper Mills were tangible personal property of a kind subject to the California sales tax when sold at retail. The products were used primarily in the building construction industry, and had for some years been sold at wholesale to distributors who in turn sold them at retail to contractors. Although Wire Mills and Paper Mills held seller's permits, neither ever actually sold any of its manufactured products at retail. Nor had either company ever sold any of its capital assets at wholesale or retail prior to the transaction that gives rise to this litigation.

Davis paid under protest the sales tax assessed by the Board on the purchase of the capital assets of Wire Mills and Paper Mills.[1] After pursuing its administrative remedies without success, Davis instituted this action for a refund of the tax. ▮ The trial court rendered judgment for Davis on the ground that the transaction in the instant case was an "occasional sale" exempt from taxation under section 6367 of the Revenue and Taxation Code.[2] That a sale of the capital assets of a business does not qualify per se as an occasional sale has been uniformly held by the cases.[3]

---

[1]Davis had contracted with Paper Mills and Wire Mills to pay any sales tax that was assessed on the sale of the capital assets.

[2]Section 6367 provides in relevant part: "There are exempted from the taxes imposed by this part the gross receipts from occasional sales of tangible personal property. . . ." All section references herein are to the California Revenue and Taxation Code unless otherwise indicated.

[3]See, e.g., *U. S. Industries, Inc.* v. *State Board of Equalization* (1962) 198 Cal.App.2d 775, 787 [18 Cal.Rptr. 171]; *Sutter Packing Co.* v. *State Bd. of Equal.* (1956) 139 Cal.App.2d 889 [294 P.2d 1083].

Section 6006.5, subdivision (a) defines an "occasional sale" to be "[a] sale of property *not held or used by a seller in the course of activities for which he is required to hold a seller's permit. . . .*" (Italics added.) The Board argues persuasively that the capital assets involved herein *were* held or used by "sellers," Wire Mills and Paper Mills, in the course of activities for which they were required to hold seller's permits, and that the occasional sale exemption is therefore inapposite.

Section 6014 defines "seller" to embrace "every person engaged in . . . selling tangible personal property of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax." Section 6066 requires all sellers to hold seller's permits.

Since the products manufactured by Wire Mills and Paper Mills were subject to the sales tax when sold at retail, it follows that Wire Mills and Paper Mills were "sellers" and that they were required to hold seller's permits. This proposition obtains notwithstanding the fact that Wire Mills and Paper Mills did not actually sell their products at retail; the statutory definition of "seller" comprehends both retailers and wholesalers.

Davis unsuccessfully attempts to establish that Wire Mills and Paper Mills were not "sellers" by relying upon *Glass-Tite Industries, Inc.* v. *State Bd. of Equalization* (1968) 266 Cal.App.2d 691 [72 Cal.Rptr. 244]. *Glass-Tite* held that a manufacturer of diode subassemblies was not a "seller" because its products were unsuitable for sale at retail; the court expressly noted that the subassemblies "[i]n the form in which they were produced by Saegertown, . . . were not usable. They had to be integrated into another product. They were made to the order of the manufacturers. Not once were they sold at retail in their original state." (266 Cal.App.2d at p. 696.) The court reasoned that since the subassemblies *could not* be sold at retail, they were not property "of a kind the gross receipts from the retail sale of which" are taxable.

Thus *Glass-Tite* is readily distinguishable from the instant case. The products manufactured by Wire Mills and Paper Mills *were* suited to retail sale; indeed, the distributors had for some years sold the products at retail. Although Davis lays great stress on the fact that here, as in *Glass-Tite*, the manufacturer never actually sold the goods at retail, section 6014 requires only that the goods be "*of a kind*" (italics added) that their retail sale would be taxable; it does not require that the goods must actually have been sold at retail by the manufacturer or, for that

matter, by anyone else.[4] The underlying predicate of *Glass-Tite* was that no one could have sold the subassemblies at retail.[5]

Since the products of Paper Mills and Wire Mills were subject to the sales tax when sold at retail, the companies were "sellers" and were obligated to hold seller's permits. The capital assets that generated this dispute were "held or used" in the course of the businesses for which Paper Mills and Wire Mills were obligated to hold those seller's permits. Consequently, the "occasional sale" exemption of section 6006.5 is clearly inapplicable. We thus sanction the administrative interpretation of the occasional sale exemption rendered by the board. (See Cal. Admin. Code, tit. 18, § 1595(e).)

Davis further contends that Paper Mills and Wire Mills incurred no sales tax liability when they sold Davis their capital assets because the sale did not satisfy the requirements of section 6051. Section 6051 provides in part: "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers. . . ." Thus section 6051 proclaims two distinct conditions for sales tax liability: (1) the vendor must be a "retailer" within the meaning of the act; and (2) the property involved must be sold "at retail." The parties agree that the property in the present case was sold at retail; Davis contends, however, that Wire Mills and Paper Mills were not "retailers."

Section 6015 provides that "every seller who makes *any* retail sale" is a retailer. (Italics added.) Since, as we have explained, Wire Mills and Paper Mills were "sellers," and since they sold the capital assets at retail, they were "retailers" as defined in section 6015.[6] The sales involved in

---

[4]The Board has so construed section 6014 and the *Glass-Tite* doctrine in an administrative regulation. (Cal. Admin. Code, tit. 18, § 1595(e).) We generally accord substantial weight to such an administrative interpretation. (*Coast Elevator Co.* v. *State Board of Equalization* (1975) 44 Cal.App.3d 576, 587 [118 Cal.Rptr. 818].) Davis, however, objects to the consideration of this regulation since it was not urged before the lower courts.

[5]The Board argues that the subassemblies could well have been sold to a customer who both manufactured and consumed the products of which the subassemblies became a component part and that the sale of the subassemblies in such case would be at retail and require a permit and thus would be taxable. To the extent that *Glass-Tite* can be interpreted to hold that subassemblies had been sold at retail, or were saleable at retail, but not subject to tax, it is disapproved.

[6]Davis cites *N. W. Pac. R. R.* v. *St. Bd. of Equalization* (1943) 21 Cal.2d 524, 528 [133 P.2d 400], for the proposition that the sales tax applies only to those engaged in a "retail sales business." In 1943, this was indeed the law. Retailer was statutorily defined as "every person engaged in the business of making sales at retail." (Retail Tax Act, § 2(e), Stats. 1935, p. 1256, at p. 1257.) Section 6015, with its broader definition of "retailer," was added to the code in 1949.

the present case were thus taxable because the capital assets were sold (1) by "retailers" and (2) "at retail."

Davis rests its further contention that Wire Mills and Paper Mills were not "retailers" upon three unsupportable propositions: (1) that section 6051 requires the vendors to have been "retailers" prior to the sale in question, (2) that our contrary interpretation of section 6051 renders that section redundant, and (3) that we ignore section 6019's modification of the definition of retailer.

Davis argues that there is no sales tax liability unless the vendor was a retailer prior to the retail sale that purportedly gives rise to the tax liability. In the present case, Paper Mills and Wire Mills were not retailers until they sold their capital assets. The sale of the capital assets, Davis therefore concludes, was not taxable because Wire Mills and Paper Mills were not retailers prior to that sale, but rather, they became retailers by virtue of that sale.

This argument finds no support in the statute. Section 6051 nowhere specifies that the vendor must have been a retailer prior to the sale in question. If the Legislature had so intended, it could simply have declared that retailers were not subject to the sales tax on their initial retail sale. The failure of the statute explicitly to exempt the initial retail sale counsels that we declare the present transaction taxable under section 6051.

Davis secondly insists that our above interpretation of section 6051 renders the statute redundant, and that our construction is therefore suspect. Since a seller who makes *any* retail sale is a retailer, Davis maintains that under our construction section 6051's requirement that the vendor be a retailer is superfluous since it adds nothing to the requirement that the sale be "at retail."

Our interpretation does not render superfluous section 6051's requirement that the vendor be a "retailer." Although Davis correctly observes that every seller who makes a retail sale is a retailer, it ignores the fact that certain non-*"sellers"* who make retail sales are not retailers. A vendor who is not "engaged in the business" of selling taxable property is not a seller. (§ 6014.) If such a vendor makes a single sale of nonexempt property at retail, it is not a retailer since section 6015, subdivision (a) embraces only *sellers* who make a retail sale. Thus, section 6051's requirement that the vendor be a "retailer" is significant; it

exempts from taxation the person not engaged in the business of selling taxable goods—at wholesale or retail—who makes an isolated retail sale of taxable property.

Finally, Davis argues that Paper Mills and Wire Mills were not "retailers" because the definition of retailer in section 6015 was substantially refined or restricted by the enactment of section 6019. Section 6019 provides that every entity making more than 2 retail sales of tangible personal property during any 12-month period "shall be considered a retailer within the provisions of this part." According to Davis, Paper Mills and Wire Mills do not qualify as retailers under section 6015; hence they are not taxable under section 6051, which taxes only retailers. The difficulty with this argument is that while Paper Mills and Wire Mills were not retailers *under section 6019,* they *were,* as we have explained, retailers under section 6015. Section 6019 did not constrict the statutory definition of retailer; it enlarged it. If the Legislature had intended section 6019 to replace, rather than supplement, section 6015, it would surely have repealed section 6015.

In sum, we conclude that the clear statutory language establishes that Paper Mills and Wire Mills were "retailers," and thus subject to the sales tax under section 6051, and that they were not exempt from the sales tax as "occasional sellers."

We reverse the judgment.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.